SHAWN N. ANDERSON
United States Attorney
Districts of Guam and the NMI
LAURA C. SAMBATARO
Assistant United States Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7215

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 19-00036 |
| Plaintiff, | |
| vs. | AMENDED  **PLEA AGREEMENT** |
| JESSE MENDIOLA BLAS, | |
| Defendant. | |

Plaintiff, United States of America, by and through Shawn N. Anderson, United States Attorney for the Districts of Guam and the NMI, and Laura C. Sambataro, Assistant United States Attorney for the Districts of Guam and the NMI, and Defendant JESSE MENDIOLA BLAS and the Defendant's counsel, agree to the following Plea Agreement:

1.  <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant, JESSE MENDIOLA BLAS, agrees to plead guilty to Count 1 of the Indictment charging the Defendant with Extortion Under Color of Official Right, in violation of Title 18, United States Code, Section 1951. The Defendant understands that this is a Class C felony which carries a maximum penalty of: not more than a twenty (20) year term of imprisonment; a fine

PLEA AGREEMENT - 1

1 not to exceed $250,000; not more than a three-year term of supervised release; restitution; and a

2 $100.00 special assessment.

3       The Defendant, JESSE MENDIOLA BLAS, understands that a violation of a condition of

4 supervised release carries an additional penalty of re-imprisonment for all or part of the ~~term of three (3)~~ *maximum authorized*

5 supervised release without credit for time previously served on post-release supervision. *years term of* [initials]

6 2.       <u>The Court's Role in Plea and Sentencing Procedure:</u>

7       The Court is not a party to this Plea Agreement. Sentencing is a matter that is solely within

8 the discretion of the Court. The Defendant understands that the Court is under no obligation to

9 accept any recommendations made by the United States and/or by the Defendant; that the Court will

10 obtain an independent report and sentencing recommendation from the U.S. Probation Office; and

11 that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory

12 maximums stated in this Plea Agreement.

13       The Defendant acknowledges that no promises of any type have been made to the Defendant

14 with respect to the sentence the Court will impose in this matter. The Defendant understands that the

15 Court is required to consider the applicable sentencing guideline range, but may depart upward or

16 downward under the appropriate circumstances.

17       The Defendant also understands that should the sentencing judge decide not to accept any of

18 the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement

19 or a basis for withdrawing this plea of guilty.

20 3.       <u>Waiver of Constitutional Rights:</u>

21       The Defendant, JESSE MENDIOLA BLAS, understands that by entering this plea of guilty

22 the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

23       (a).     The right to a jury trial, and to be represented at trial and every other stage of

24       the proceedings;

PLEA AGREEMENT - 2

(b). The right at trial to confront and cross-examine the adverse witnesses;

(c). The right to remain silent at trial, with such right to silence not being used against Defendant in any way;

(d). The right to testify at trial, and present evidence;

(e). The right to compel witnesses to testify; and

(f) The right to plead not guilty and to persist in that plea.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4. Elements of the Offense:

The United States and the Defendant agree that in order to convict the Defendant of Extortion Under Color of Official Right, in violation of Title 18, United States Code, Section 1951, the United States would have to prove beyond a reasonable doubt the following elements:

(a). First, on or about November 21, 2019, the Defendant, JESSE MENDIOLA BLAS, was a public official;

(b). Second, the Defendant intended to obtain money that the Defendant knew he was not entitled to receive;

(c). Third, the Defendant knew that the money would be given in return for an express promise to perform a particular official action;

(d). Fourth, commerce or the movement of an article or commodity in commerce from one state to another would have been affected in some way; and

PLEA AGREEMENT - 3

(e) Fifth, the Defendant did something that was a substantial step toward committing the crime.

5. <u>Factual Basis and Statement of Facts:</u>

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for JESSE MENDIOLA BLAS's guilty plea.

The Defendant was born in 1962, and is a citizen of the United States.

The Defendant has served as the Mayor of the Village of Yona, Guam since 2016. The Defendant is an elected official. One of the Defendant's official actions as the Mayor of Yona is the issuance of mail cluster boxes units (CBUs) to residents of his village that do not have access to home mail delivery. According to the United States Postal Service (USPS), CBUs are mail facilities located in villages on Guam to facilitate mail delivery for locations that do not have home delivery. The CBUs were purchased by the USPS, however the Mayor's Offices of the respective villages are responsible for issuing CBUs to village residents. There are no costs incurred by postal customers who wish to obtain a mail box, unless a lock is changed or a key is lost, which would incur a $50 fee payable to the USPS. The Yona CBUs are located across from the Mayor's Office.

In the fall of 2018, "B.K.," a cooperating defendant in an unrelated case, approached the Defendant at the direction of agents with the Federal Bureau of Investigation (FBI). B.K. requested the Defendant's assistance in obtaining a mail box in the Yona Cluster Box Units (CBUs) in order to receive packages of methamphetamine from the mainland. The Defendant proceeded to accept cash payments from B.K. from November 2018 through January 2019 in return for continued use of the CBU.

On November 21, 2018, B.K. called the Defendant to set up a meeting. That day, the Defendant met with B.K. at Buenas Market in Yona, Guam and B.K. gave the Defendant $300. The

PLEA AGREEMENT - 4

Defendant and B.K. then reconvened at the Yona Mayor's Office, where the Defendant assigned B.K. a CBU in exchange for the money previously paid.

On December 11, 2018, B.K. called the Defendant to arrange a meeting. B.K. then met with the Defendant at the Yona Mayor's Office. Prior to the meeting, law enforcement investigators provided B.K. with $2,500 to give to Blas. During the meeting, B.K. told the Defendant that s/he picked up a package yesterday and had one more coming. B.K. gave the Defendant money which B.K. informed the Defendant was given by B.K.'s associates because their package came through. B.K. told the Defendant that s/he was waiting for another package and it was "ice," meaning methamphetamine. B.K. stated that once it arrived, s/he would give the Defendant whatever "they" gave her. Following the meeting, B.K. met with law enforcement investigators and informed them that she gave the Defendant the $2,500.

On December 20, 2018, B.K. met with the Defendant in order to pay another bribe to the Defendant. The meeting took place at the Yona Mayor's Office. Prior to the meeting, law enforcement investigators gave B.K. $5,000 to give to the Defendant. B.K. would testify that she handed the Defendant $5,000 representing the amount s/he was allegedly paid for receiving a package of methamphetamine and was given $100 back. B.K. believed that s/he and the Defendant were going to split the money. During this meeting, the Defendant asked B.K. if s/he was working for the FBI or CIA. B.K. denied being a government informant. The Defendant and B.K. agreed to meet the following week.

On January 3, 2019, B.K. met with the Defendant. No bribes were paid that day. The meeting took place in a parking lot in Yona. The Defendant was sitting in the driver's seat of the Government of Guam: Village of Yona pickup truck. The Defendant asked B.K. if the people s/he was working with wanted another mailbox. The Defendant offered to provide another mailbox under a different name and address.

PLEA AGREEMENT - 5

On January 12, 2019, B.K. called the Defendant to inform him that B.K. had received another methamphetamine package and had money for the Defendant. Prior to the meeting, law enforcement investigators provided B.K. with $4,000. B.K. and the Defendant then met at the Yona Mayor's Office. B.K. would testify that she gave the Defendant the $4,000. B.K. and the Defendant then discussed the purchase of another CBU. The Defendant said that it would cost $15,000 for another mailbox, and B.K. said that s/he would talk with his/her people about paying $15,000 for another CBU. The Defendant said that he had plenty of empty boxes and could change the assigned box every week so that packages would not be caught by law enforcement. B.K. and the Defendant discussed two drug packages that were intercepted by law enforcement. The Defendant said that the packages were intercepted because the traffickers were not using the Yona cluster boxes.

On January 15, 2019, B.K. and the Defendant met in Yona. During the meeting, the Defendant was sitting in the driver's seat of his official Village of Yona vehicle. B.K. informed the Defendant that the people s/he was working with were willing to pay $15,000 for a second mailbox and would have the money the next day. The Defendant said that he could change the box to avoid detection by law enforcement and described the manner in which this concealment would take place. B.K. would notify the Defendant when a package was coming. The Defendant would give B.K. an address and keys to a mailbox. Once B.K. received the package, B.K. would return the keys to the Defendant and the Defendant would give B.K. another cluster box.

After B.K. stopped making payments to the Defendant, the Defendant told B.K. that if he did not receive money, the Defendant would cut off access to the CBU. On March 21, 2019, after the Defendant had been sending text messages to B.K. stating that he would cut off access, B.K. called the Defendant. The Defendant told B.K. that if he did not receive $8,000 by that night or the next day, the Defendant would close down the box the next day.

PLEA AGREEMENT - 6

1     This statement of facts is made for the limited purpose of supporting the Defendant's guilty
2 plea. It therefore does not contain all facts relating to the underlying criminal conduct. This
3 statement of facts does not preclude either party from presenting and arguing, for sentencing
4 purposes, additional facts which are relevant to the guideline computation or sentencing, unless
5 otherwise prohibited in this agreement.

6.     The United States Agrees:

(a.)     Dismissal(s):

At the time of sentencing, the United States agrees to move to dismiss Counts 2-13 of the Indictment, which charge the Defendant with Extortion Under Color of Official Right, in violation of Title 18, United States Code, Section 1951 and Travel Act Bribery, in violation of 18 U.S.C. § 1952.

7.     United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing. In determining a sentence, the Court is obligated to consider that range, possible departures or variances under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a).

(a.)     Base Offense Level:

The United States and the Defendant agree that the base offense level for Extortion Under Color of Official Right is 14. See U.S.S.G. §2C1.1.

(b.)     Specific Offense Characteristics:

The United States and the Defendant also agree and stipulate that the base offense is increased by an additional six (6) levels because the Defendant was an elected public official in a high-level decision-making or sensitive position, and the crimes involved more than one bribe or extortion. See U.S.S.G. §§2C1.1(b)(1); (b)(2) and (b)(3). The Defendant understands that the United

PLEA AGREEMENT - 7

States will seek an additional two (2) level increase under U.S.S.G. § 2B1.1(b)(1). The Defendant reserves his right to contest this two-level increase. See Paragraph 13 *infra*.

(c.) <u>Acceptance of Responsibility</u>:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct[1]; accepts this Plea Agreement; and notifies the parties of his intention to enter a plea of guilty no later than January 27, 2020, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged with a criminal offense involving conduct that was outside the knowledge of the United States as of the date of Defendant's guilty plea.

(d.) <u>Criminal History</u>:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

(e.) <u>Departures</u>:

The Defendant and the United States understand and acknowledge that, at sentencing, they are free to make whatever sentencing recommendations for whatever reasons they deem are

---

[1] For purposes of this agreement, obstructive conduct will be defined by U.S.S.C. §3C1.1 and its Application Notes.

PLEA AGREEMENT - 8

appropriate. That is, the United States and the Defendant are free to seek an upward or a downward departure from the applicable sentencing guideline range.

8.          Incarceration:

(a.)         Length of Imprisonment:

The United States and the Defendant agree to recommend that the Court impose a sentence within the applicable sentencing guideline range.

9.          Criminal Fine:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

10.         Supervised Release:

The United States and the Defendant agree to recommend that the Court impose a three (3) year term of supervised release to include the following special conditions, in addition to the standard conditions of supervised release:

(1) that the Defendant participate and complete such drug testing as the Probation Officer directs; and

(2) that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer;

(3) that the Defendant provide financial information, provide copies of Federal income tax returns and allow credit checks, at the direction of the Probation Officer;

(4) that the Defendant shall disclose all assets and liabilities to the Probation Officer and shall not transfer, sell, give away, or otherwise convey or secret any asset, without the advance approval of the Probation Officer; and

PLEA AGREEMENT - 9

(5) that the Defendant be prohibited from incurring any new debt, opening new lines of credit, or enter any financial contracts or obligations without the prior approval of the Probation Officer;

(6) that the Defendant participate and complete financial counseling and life skills programs at the direction of the Probation Officer.

11. <u>Mandatory Special Penalty Assessment</u>:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the District of Guam, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States at or before sentencing as proof of this payment.

12. <u>Payments While Incarcerated</u>:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

13. <u>Forfeiture</u>:

(a.) There is no agreement as to forfeiture. The United States plans to seek a forfeiture money judgment at sentencing in the amount of $11,700, which represents the proceeds obtained as a result of the offense.

(b.) The parties agree to conduct a contested forfeiture hearing at or before sentencing in accordance with Federal Rule of Criminal Procedure 32.2. Both parties agree to waive their right to have forfeiture determined by a jury.

14. <u>Financial Disclosure Obligations</u>:

Defendant agrees to submit to the United States Attorney's Office for the Districts of Guam and the NMI, within three weeks of the execution of this plea agreement, a complete, accurate and

PLEA AGREEMENT - 10

truthful financial statement and accompanying releases, in a form it provides and as it directs. Defendant agrees to disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. Defendant authorizes the United States Attorney's Office for the Districts of Guam and the NMI to obtain a credit report on him to evaluate his ability to satisfy any financial obligation imposed by the Court.

Defendant understands and agrees that any monetary penalties imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States, pursuant to 18 U.S.C. § 3613. Defendant understands that, by law, interest accrues on any remaining balance of the debt. Defendant agrees not to dissipate assets. If Defendant is financially unable to immediately pay any monetary penalties in full, Defendant agrees: (a) to cooperate with the United States Attorney's Office; (b) to provide updated financial statements upon request by the United States Attorney's Office and to keep the office advised about Defendant's current address; and (c) for his debt to be placed on the Treasury Offset Program and any tax refund/rebate offset program existing in his state of residency. Defendant understands that any funds captured by an offset program will be paid towards his monetary penalties, but does not relieve him of his obligation to pay the monetary penalties in full.

15. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of a criminal offense involving conduct that was outside the knowledge of the United States as of the date of Defendant's guilty plea.

16. <u>Appeal Rights</u>:

PLEA AGREEMENT - 11

Defendant understands that he has a limited right to appeal or challenge the conviction imposed by the Court. Defendant hereby expressly waives his right to appeal his conviction. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

17. Integration Clause:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Districts of Guam and the NMI, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Districts of Guam and the NMI.

SHAWN N. ANDERSON
United States Attorney

_____     1/30/2020
LAURA C. SAMBATARO                  Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the

PLEA AGREEMENT - 12

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____  1/27/20
JESSE MENDIOLA BLAS            Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties.

_____  1/29/20
JOSEPH RAZZANO                 Date
Attorney for the Defendant

PLEA AGREEMENT - 13